**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

### FOR THE TENTH CIRCUIT

**August 3, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

UNITED STATES OF AMERICA,

　　Plaintiff - Appellee,

v.

BRYANT DEWAYNE UNDERWOOD,

　　Defendant - Appellant.

No. 25-7037
(D.C. No. 6:24-CR-00099-RAW-1)
(E.D. Okla.)

_____

### ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

　　Bryant Underwood appeals the denial of his motion to suppress the contents of a search initiated during a traffic stop, arguing the initial stop violated the Fourth Amendment. But the officer who pulled over the vehicle in question had a reasonable suspicion that the driver committed a traffic violation, so the stop was constitutional. We thus affirm.

---

　　[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

## Background[1]

Late one night in October 2023, LeFlore County Sheriff's Deputy Wes Wiles saw a car stop and let out two passengers on Chloe Layne Road, near the intersection with Casey Lane, in Spiro, Oklahoma. Wiles pulled the car over and, upon approaching the driver's side window, saw the end of a gun. He and other deputies ordered the passengers out—Underwood among them—and searched the car. Based on the results of that search, the government brought firearms charges against Underwood.

Before the district court, Underwood raised a Fourth Amendment challenge to the search, arguing that the stop "was not justified at its inception." R. vol. 1, 31. The government defended the stop's constitutionality on the grounds that it was premised on a traffic violation. The relevant traffic statute applies "outside of a business or residence district" and prohibits "stop[ping], park[ing,] or leav[ing] standing any vehicle . . . upon the paved or main-traveled part of [a] highway when it is practicable to stop, park[,] or so leave such vehicle off such part of said highway." Okla. Stat. tit. 47, § 11-1001(A)(1). Oklahoma law defines residence districts to include "[t]he territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of three hundred

---

[1] Given the procedural posture, we draw these facts from the magistrate judge's report and recommendation, which the district judge adopted. *See United States v. Baker*, 108 F.4th 1241, 1246 (10th Cir. 2024) (explaining that we "accept the district court's findings of fact unless they are clearly erroneous" when reviewing motion-to-suppress denial (quoting *United States v. Mayville*, 955 F.3d 825, 829 (10th Cir. 2020))).

(300) feet or more is in the main improved with residences or residences and buildings in use for business." Okla. Stat. tit. 47, § 1-154.

At a hearing on Underwood's motion to suppress, Wiles described observing "the vehicle stopped in the middle of the roadway . . . in a residential area." R. vol. 1, 51. He further testified that Chloe Layne Road was "an old county road," about 12 to 16 feet wide, with about 20 or 30 "houses on either side of it." *Id.* at 63. It was "basically one step above a gravel road"—"narrow" with "no painted lines" or "shoulder," "[p]otholes everywhere," and "brush growing on either side" in places. *Id.* at 63, 64. When the car stopped, Wiles explained, the driver's side was roughly under four feet from the near edge of the road, while the passenger's side was about six feet from the opposite edge of the road—enough room that the car "could have scooted over to one side or the other," in Wiles's estimation. *Id.* at 48.

A defense investigator similarly testified that Chloe Layne Road is a "narrow," "old county road" with no lighting or painted lines, no "shoulders to pull off" onto, and "ditches on either side . . . [i]n places." *Id.* at 79, 80. The investigator also characterized the area as "rural" but "primarily residential." *Id.* at 79.

Underwood also presented several visual exhibits, including a satellite image of the area surrounding where the stop occurred. Wiles marked on the image the location of his patrol car ("me") and the car Underwood was in ("them") when the latter stopped on Chloe Layne Road[2]:

---

[2] For readability purposes, we circle Wiles's markings in yellow.



Underwood also introduced pictures his investigator took on the same road, illustrating the width of the road and its condition.

A magistrate judge recommended concluding that the search did not violate the Fourth Amendment because Wiles "witnessed a traffic violation, or at the very least possessed a reasonable articulable suspicion that a traffic violation had occurred." R. vol. 1, 34. In particular, the magistrate judge found that the "section of Chloe Layne Road [where the car stopped] is mainly unimproved land," so "the area in question is not a residence district" and thus stopping in the middle of the road was a violation of § 11-1001. *Id.* at 33. The district court overruled Underwood's objections and adopted the magistrate judge's report and recommendation.

Underwood then pleaded guilty to one count of possessing an unregistered firearm in violation of 26 U.S.C. §§ 5845(a), 5861(d), & 5871. He was sentenced to

46 months in prison and three years of supervised release. Pursuant to his plea agreement, he reserved the right to appeal the district court's suppression decision, which he does now.

## Analysis

Underwood contends the district court erred in rejecting his claim that the contents of the vehicle search should be suppressed because the underlying traffic stop was unconstitutional. "When reviewing the denial of a motion to suppress, we view the evidence in the light most favorable to the government, accept the district court's findings of fact unless they are clearly erroneous, and review de novo the ultimate question of reasonableness under the Fourth Amendment." *Baker*, 108 F.4th at 1246 (quoting *Mayville*, 955 F.3d at 829).

To comply with the Fourth Amendment, a traffic stop must be "justified at its inception" and the detention must be "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 19–20 (1968); *see also United States v. Davis*, 636 F.3d 1281, 1290 (10th Cir. 2011) (explaining that *Terry* governs routine traffic stops). A stop is "justified" if it is supported by reasonable suspicion—that is, if the officer can "point to specific and articulable facts which" support an "objective[ly]" reasonable belief that "criminal activity may be afoot." *Terry*, 392 U.S. at 20–21, 30. "[T]he government bears the burden of demonstrating reasonableness." *United States v. Pena-Montes*, 589 F.3d 1048, 1057 (10th Cir. 2009).

The district court concluded that the government met this standard because Wiles "witnessed . . .a traffic violation, or at the very least possessed reasonable articulable suspicion that a traffic violation had occurred." R. vol. 1, 34. Specifically, it credited Wiles's testimony that "the driver of [the] vehicle [Underwood] was riding in stopped in the middle of Chloe Layne Road," even though "there was room for the driver to pull over to the side of the road." *Id.* And it determined that this violated Oklahoma's law against "stop[ping] in the middle of a roadway." *Id.*; *see* § 11-1001(A)(1) (prohibiting stopping in road when practicable to stop on side of road).

Underwood disputes that any § 11-1001 violation occurred, arguing that the area in question qualifies as a "residence district" and is thus exempt from § 11-1001's restrictions. Recall that a residence district is one that "for a distance of three hundred (300) feet or more is in the main improved with residences or residences and buildings in use for business." § 1-154. Underwood cites the investigator's description of the area as "primarily residential," R. vol. 1, 79, and Wiles's testimony that the car stopped near a driveway "in a residential area" with 20 or 30 houses on either side as evidence that the area meets that definition, *id.* at 51.

Yet the district court's factual findings belie Underwood's assertions. It found that "th[e] section of Chloe Layne Road [the car stopped within] is mainly unimproved land." *Id. at 33.* And that finding is not "clearly erroneous," *Baker*, 108 F.4th at 1246 (quoting *Mayville*, 955 F.3d at 829), considering that the aerial photographs show "no frontage residences to the south and . . . only two frontage residences to the north" on the relevant section of the road, R. vol. 1, 33. So—

6

accepting the unimproved-land finding as true, *see Baker*, 108 F.4th at 1246—we agree with the district court that the area was not "in the main improved with residences" and thus was not a residence district exempt from § 11-1001 enforcement. § 1-154.

Underwood alternatively suggests that the car's stop didn't violate § 11-1001 because the statute only mandates pulling off "the paved or main-traveled part of the highway" if "it is practicable," and it wasn't practicable to do so on Chloe Layne Road. § 11-1001(A)(1). He emphasizes that the road has no shoulder, no lighting, and is flanked in places by ditches and vegetation. But Wiles testified that, when the car stopped, there was enough room that it "could have scooted over to one side [of the road] or the other." R. vol. 1, 48. That was enough, here, to give Wiles reasonable suspicion that the driver had violated § 11-1001's mandate to pull off the main highway when practicable.

Accordingly, Wiles had reasonable suspicion that the driver of the car Underwood was riding in committed a violation of § 11-1001, and the traffic stop was justified at its inception.[3]

---

[3] We therefore decline to address the parties' arguments concerning alternative bases for the stop, including that Wiles's suspicion was based on a mistake of law.

**Conclusion**

We affirm the denial of Underwood's motion to suppress.


Entered for the Court


Nancy L. Moritz
Circuit Judge